# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Patricia Kern, et al.,<br><br>    Defendants | Case No.: 2:18-cv-00283-JAD-PAL<br><br>**Order Granting in Part Ex Parte Motion for Temporary Restraining Order and Motion to Temporarily Seal Case and Ordering Defendants to Show Cause Why the Restraining Order Should Not Be Converted into a Preliminary Injunction**<br><br>[ECF Nos. 2, 3] |

The United States of America sues a host of individuals and entities for injunctive relief under 18 U.S.C. § 1345 and alleges that they have all schemed to defraud persons using the United States mail system in violation of 18 U.S.C. §§ 1341 and 1349.[1] The United States now moves ex parte for an order temporarily restraining defendants from engaging in the scheme and destroying records of the scheme's operations.[2] It also seeks an order requiring defendants to show cause why the temporary restraining order—if one is entered—should not be converted into a preliminary injunction.[3] It additionally moves to seal the docket and all documents in this case until 10:00 a.m. on February 21, 2018, except to the extent necessary to prepare for and serve a restraining order.[4]

    For the reasons set forth below, I grant the motions for a temporary restraining order and to temporarily seal the docket in part, I order the defendants to show cause why the restraining order should not be converted into a preliminary injunction, and I set that matter for hearing on March 5, 2018, at 3 p.m.

---

[1] ECF No. 1.

[2] ECF No. 2.

[3] *Id.*

[4] ECF No. 3.

1

**Discussion**

**A.     Standard to obtain temporary restraining order without notice**

Rule 65 of the Federal Rules of Civil Procedure authorizes me to "issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if" two conditions are met.[5]  First, specific facts that "clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition" must be established by affidavit or verified complaint.[6]  Second, "the movant's attorney" must certify "in writing any efforts made to give notice and the reasons why it should not be required."[7]

   *1.     Imminent irreparable harm*

The United States relies on the declaration of Terrence Sullivan.  Sullivan is a Postal Inspector with the United States Postal Inspection Service (USPIS), has been for over 25 years, and is currently assigned to the USPIS Department of Justice Mail Fraud Team in Washington, D.C.[8]  Sullivan declares that he is part of the team investigating a mass-mailing scheme that is operating out of Las Vegas, Nevada.[9]  Sullivan explains that the alleged scheme involves the sending of solicitation packets that are designed to make it appear that the recipient has won money or valuable prizes.[10]  To claim their winnings, recipients are instructed to fill out and return claim vouchers and pay release fees, which are typically between $20–$50.[11]  But the recipients do not get any money or valuable prizes when they return the form and pay the fee;

---

[5] Fed. R. Civ. P. 65(b)(1).

[6] *Id.* at 65(b)(1)(A).

[7] *Id.* at 65(b)(1)(B).

[8] ECF No. 5 at 3, ¶ 1.

[9] *Id.* at 3 and 5, ¶¶ 2, 8.

[10] *Id.* at 8–18, ¶¶ 25–68.

[11] *Id.*

they get a list of publicly available sweepstakes that they can enter, and they get their name noted as a "buyer" on the senders' lists.[12]

Sullivan describes the solicitation packets in detail, including the many elements that make them appear to be official, unique, and time-sensitive assurances that the recipient won money or valuable prizes.[13] The United States provides copies of solicitations that defendants allegedly mailed, and I note that they are consistent with Sullivan's descriptions.[14] Sullivan explains that defendants currently rent numerous mailboxes at commercial-mail receiving agencies (CMRAs) in several states where recipients are instructed to send their claim forms and release-fee payments, and that CMRAs forward mail to the renter and thus allow defendants to conceal their actual location.[15] The United States provides evidence showing that defendants utilize numerous bank accounts for their business operations.[16]

Sullivan declares that this scheme involves four tiers of participants: direct mailers, printers, cagers, and data managers.[17] The direct-mailer participants are Patricia Kern, ten entities that were incorporated in the state of Nevada between 2012 and 2016, and four non-registered companies.[18] The printer participants are Edgar Del Rio; NSD Products, Inc.; Sean O'Connor; Epifanio Castro; and New Generation Graphics, Inc.[19] The cager participant is

---

[12] *Id.*

[13] *Id.* at 8–10, 14–18, ¶¶ 25–34, 54–68.

[14] *See* ECF No. 1 at 29–59.

[15] ECF No. 5 at 12–13, ¶¶ 44–52.

[16] ECF No. 4 at 6–8.

[17] ECF No. 5 at 5–7, ¶¶ 9–19.

[18] *Id.* at 5, ¶¶ 9–10. The registered entities are: Advanced Allocation System, Inc.; Distribution Reporting Center, Inc.; Global Data Funding, Inc.; Marketing Image Direct, Inc.; Montgomery Marketing, Inc.; North American Disbursement Agency, Inc.; Pacific Allocation Systems, Inc.; Special Money Managers, Inc.; All American Awards, Inc.; and Golden Products Service, Inc. And the non-registered entities are: Imperial Award Services; Money Securities; Price Awards; and Assets Unlimited.

[19] *Id.* at 6–7, ¶¶ 12–16.

Andrea Burrow.[20] The data-manager participants are Stephen Fennell and Neptune Data Services, Inc.[21] All have been named as defendants in this case. Sullivan explains that defendants mail solicitation packets between 5 and 10 times each week, with each packet being sent to between 2,000 and 5,000 people.[22] He opines that defendants mailed approximately 950,000 solicitation packets in 2017.[23]

Sullivan explains and provides further evidence to show that the defendants have been repeatedly ordered to cease-and-desist from engaging in these type of solicitations after the USPIS filed complaints against several of them in June 2011, July 2012, August 2012, and June 2013.[24] After each cease and desist order, Kern advised her associates to "watch your back[,]" exclaimed "no worries already getting set up elsewhere[,]" or she identified for them choice solicitations from the censured company to "redo" for the other companies, and other companies associated with Kern later mailed solicitations with language that is nearly identical to the solicitations that were attached to the USPIS's complaints.[25]

The evidence shows that the defendants have the means and ability to switch their business operations on the fly and the willingness to ignore court orders, and that they actively conceal the identities of the individuals involved in the operations. Based on this record, most of the entity defendants appear to be shams, and the product—the solicitations—can be easily molded to suit any entity. It can be reasonably inferred from this evidence that, were defendants provided notice and an opportunity to be heard, they would dissipate, move, hide, and conceal their assets and business equipment, including any payments from recipients that are still in the mail system, and that they would continue their operations either directly or indirectly. I find

---

[20] *Id.* at 6, ¶ 17.

[21] *Id.* at ¶¶ 18–19.

[22] *Id.* at 8, ¶ 24.

[23] *Id.*

[24] *Id.* at 18–21, ¶¶ 69–91.

[25] *Id.*

4

that the evidence clearly shows that immediate and irreparable injury, loss, or damage will result if the defendants are allowed to be heard in opposition on the motion for a temporary restraining order.

### *2. Explanation for why notice should not be required*

Counsel for the United States declares that the defendants have not received—and should not receive—notice because the evidence shows that they have a habit of ignoring court orders, creating new entities and registering new mailboxes to evade orders, and concealing their identities and assets.[26] Counsel infers from defendants' past behavior that, if notified, defendants will "take steps to continue their operation in the event" that the court "enters an order directing them to stop their fraudulent activity."[27] This includes diverting victim payments that are already in the mail stream.[28] Counsel declares that giving defendants notice may alert them that federal law-enforcement actions are imminent, which heightens the risk that they may destroy evidence.[29] I find that counsel has adequately explained why notice should not be required in this case.

## B. Standard to obtain a temporary injunction

The legal standard for obtaining a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[30] In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court clarified that the standards "require[ ] a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that [a

---

[26] ECF No. 2-2 at 4, ¶ 8.

[27] *Id.*

[28] *Id.*

[29] ECF No. 3 at 5, ¶ 9.

[30] *See Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

temporary restraining order is in the public interest.'"³¹ But "if a plaintiff can show that there are 'serious questions going to the merits'—a lesser showing that likelihood of success on the merits— then a [temporary restraining order] may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."³²

The United States argues that a lesser standard applies here—that irreparable harm is presumed—because it seeks injunctive relief under a federal statute that expressly authorizes such relief.³³ It relies on Ninth Circuit cases that predate the Supreme Court's decisions in *Winter* and *eBay, Inc. v. MerExchange, LLC*³⁴ to make its point. But I need not decide whether the rule urged by the United States remains good law in the face of these Supreme Court decisions because the United States meets the higher *Winter* standard. As explained above, I find that the United States has shown that it, and the class of persons it seeks to protect, will suffer irreparable harm if the defendants are not temporarily restrained from engaging in this allegedly fraudulent behavior, so I will consider the three remaining *Winter* factors.

### 1. *Likelihood of success on the merits*

The United States asserts a single claim for injunctive relief under 18 U.S.C. 1345, alleging that "defendants violated, are violating, and are about to violate 18 U.S.C. §§ 1341 and 1349 by executing schemes and artifices to defraud, or for obtaining money or property by means of false or fraudulent representations with the intent to defraud" and using the U.S. mail system to do so.³⁵ To obtain a temporary restraining order, the United States must therefore

---

³¹ *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

³² *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting with emphasis *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

³³ ECF No. 2 at 16 (citing *United States v. Odessa Union Warehouse Co-Op*, 833 F.2d 172 (9th Cir. 1987) and *Federal Trade Comm. v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999)).

³⁴ *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (holding that courts must apply the traditional four-factor test when deciding whether to award permanent injunctive relief to a prevailing party whose claims arise under the Patent Act and, thus, rejecting rule that courts "generally issue permanent injunctions against patent infringement absent exceptional circumstances").

³⁵ ECF No. 1 at ¶ 152.

show that it is likely to succeed on the merits of its claim for mail fraud, which has the elements of: "(1) proof of a scheme to defraud; (2) using or causing the use of the mails to further the fraudulent scheme; and (3) specific intent to defraud."[36] The United States argues that the evidence shows that defendants "participate in the creation, addressing, personalization, printing[,] and/or distribution of solicitations" that contain "false and misleading statements that are designed to induce victims to send money to" the defendants.[37] I agree.

Sullivan declares that the scheme involves four tiers of participants, he explains the tasks that each tier performs, and he identifies what tier each defendant falls into. Sullivan describes the content of the solicitation packets that defendants allegedly mailed and the United States provides copies of the solicitations. The provided solicitations are consistent with Sullivan's descriptions in that they use language, fonts, and official-looking graphics and titles that give the overall impression that the recipient has won a large prize, and they contain reassurances that they are the real thing and elements that make them appear to be personalized for each recipient, including handwritten looking notations that congratulate the recipient[38] or "guarantee[ ] [that they are] to receive"[39] and "personalized I.D." numbers.[40] The solicitations utilize language assuring the recipient that "pending monies" have been "slated and earmarked for"[41] or are "on deposit for immediate disbursement to" them.[42] Sullivan describes, and the United States provides evidence of, notes and letters that recipients have mailed along with their claim forms and release payments to defendants. This evidence shows that the recipients believe that they have won cash prizes, but have not received the promised payments. I find that the United States

---

[36] *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).

[37] ECF No. 2 at 17.

[38] ECF No. 1 at 38.

[39] *Id.* at 31.

[40] *Id.* at 59.

[41] *Id.* at 29, 49.

[42] *Id.* at 34.

is likely to establish that defendants are engaged in a scheme to defraud the recipients with solicitations that are materially misleading, and that they use the U.S. mail system in furtherance of that scheme.

The United States' evidence shows that many of the defendants have been ordered to cease and desist from mailing solicitations with language similar or identical to the solicitations that defendants are allegedly currently mailing to recipients. It also shows that those individual defendants who have not been the subject of a cease-and-desist order have been informed of those orders by Kern. The evidence shows that the defendants have taken steps to conceal their identities or the true nature of their ownership. It also shows that several of defendants have been exposed to letters and notes that the recipients send along with their claim forms and release fees stating that they believe that they have won large sums of money, thanking the defendants for that, and inquiring when they will receive the promised payments. Based on this record, I find that the United States has shown that it is likely to succeed on the merits of its claim.

### 2. *Balance of equities*

This factor requires me to balance the potential harm to the plaintiff in the absence of a temporary restraining order with the potential harm to the defendants if such an order is granted. The United States seeks to restrain the defendants from committing several categories of acts, so I address the relative harms with regard to each category.

The United States seeks to restrain the defendants from: (1) placing, causing others to place, or conspiring or assisting others to place, materials in the U.S. mail system that contain false or fraudulent representations or promises including, but not limited to statements to the effect that the recipient has won, will win, or will receive cash, prizes, or awards or that the recipient was specifically selected or chosen for any reason other than the fact that their name or address appears on a mailing list; (2) receiving, handling, opening, or forwarding any mail from U.S. residents that responds to materials that were placed in the U.S mail system and contain false or fraudulent representations or promises; (3) selling, leasing, or offering to do either for any lists of U.S. residents or mailing lists of any time compiled from U.S. residents who have responded to any materials that were placed in the U.S mail system and contain false or

fraudulent representations or promises; (4) entering or inputting data about U.S. residents into a database or forwarding such data received in response to materials that were placed in the U.S. mail system and contain false or fraudulent representations or promises; and (5) depositing, handling, forwarding, or processing any payments received from U.S. residents in response to materials that were placed in the U.S. mail system and contain false or fraudulent representations or promises. These acts constitute the crime of mail fraud, as defined by 18 U.S.C. §§ 1341 and 1349, or are in furtherance of that crime. No harm will befall the defendants if they are enjoined from engaging in any of these acts. But the United States and its citizens will be harmed if, in the absence of a restraining order, defendants continue to commit acts of or in furtherance of the crime of mail fraud. The harms to the recipients include the loss of money with little chance of recovery; false feelings of hope that they won a substantial prize or cash award; false feelings of urgency to claim the promised prize; and feelings of anger, embarrassment, or distress when no prize or money is forthcoming. The harms to the United States include the continued use of its mail system to perpetuate a scheme to defraud U.S. citizens and any distrust or anger those citizens feel toward that system or the United States as a result of being defrauded.

The United States also seeks to restrain the defendants from destroying, deleting, removing, or transferring any and all business, financial, accounting, and other records concerning their operations and the operations of any other entity that is owned or controlled in whole or in part by any defendant. The only harm I perceive that could befall the defendants if they are so enjoined is having to pay to maintain these records and any copies. This is a minimal harm, and I anticipate that the defendants are already required to maintain many of these records for several years under federal or state law. The harm to the United States and the recipients is loss of documentation necessary for restitution or recovery, which outweighs the defendants' potential harm.

The final acts that the United States seeks to restrain the defendants from committing are: (1) placing, causing others to place, or conspiring or assisting others to place, materials in the U.S. mail system that offer for sale information regarding sweepstakes or lotteries; (2) receiving, handling, opening, or forwarding any mail from U.S. residents that responds to materials that

were placed in the U.S mail system and offer for sale information regarding sweepstakes or lotteries; (3) selling, leasing, or offering to do either for any lists of U.S. residents or mailing lists of any time compiled from U.S. residents who have responded to any materials that were placed in the U.S mail system and offer for sale information regarding sweepstakes or lotteries; (4) entering or inputting data about U.S. residents into a database or forwarding such data received in response to materials that were placed in the U.S. mail system and offer for sale information regarding sweepstakes or lotteries; and (5) depositing, handling, forwarding, or processing any payments received from U.S. residents in response to materials that were placed in the U.S. mail system and offer for sale information regarding sweepstakes or lotteries. The United States has not demonstrated that these acts, in the absence of fraud or false or fraudulent representations or promises, are criminal. The potential harm to defendants in being enjoined from committing these acts are any profits that they could realize from engaging in a legitimate endeavor. This is not a slight harm, but I find that if the defendants are permitted to continue this conduct, they will use this exception as a loophole to continue sending the same or similar solicitations that the evidence tends to show constitute mail fraud. Thus, I conclude that this factor weighs in favor of issuing a temporary restraining order.

### *3. Public interest*

The final *Winter* factor requires me to determine whether the requested temporary restraining order would advance or impair the public's interest. The purpose of the requested order is to prevent future harm to the public by denying the defendants' ability to use the U.S. mail system to aid in an allegedly fraudulent scheme. The public has a strong interest in protecting the U.S. mail system from being used by schemers and fraudsters. I find that the requested temporary restraining order would advance that public interest. So, I conclude that this factor is also met.

## C. Standard to seal records

"The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[43] "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court record.'"[44] "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[45] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[46] "To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[47] The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a *non-dispositive motion*.'"[48] "Under the exception, 'the usual presumption of the public's right is rebutted[,]" so "a particularized showing of 'good cause' under [FRCP] 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[49]

The United States moves under the higher "compelling reasons" standard.[50] I find that standard applies in this context—the motion is dispositive because it addresses the merits of the action and seeks a restraining order before trial. The United States argues that I should

---

[43] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1118–19 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[44] *Id.* at 119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[45] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[46] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[47] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[48] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[49] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) and *Foltz*, 331 F.3d at 1135, 1138).

[50] ECF No. 3.

temporarily seal the entirety of this case because the defendants have a long history of ignoring and seeking to evade orders requiring them to cease and desist the mailing of solicitations that are similar or identical to the solicitations that are at issue in this case. Further, that defendants have a history of actively concealing their identities and the locations of their operations. They also have a history of destroying records in the face of such orders. The United States' evidence shows that defendants have the means and willingness to continue their operations and divert payments from recipients of their mailings on the fly. Finally, the United States asserts that it intends to serve the temporary restraining order on the defendants in conjunction with the execution of premises search warrants, and if the defendants are given advanced notice of the nature of this case, they could destroy evidence and law-enforcement personnel would be placed at risk. Based on this record, I find compelling reasons exist to temporarily seal the entirety of this case.

**Conclusion**

Accordingly, and with good cause appearing:

IT IS HEREBY ORDERED that the ex parte motion for a temporary restraining order **[ECF No. 2] is GRANTED in part**. The defendants Patricia Kern d/b/a Imperial Award Services, Money Securities, and Assets Unlimited; Advanced Allocation Systems, Inc. d/b/a Pacific Disbursement Report; Distribution Reporting Center, Inc.; Funding Managers, Inc.; Global Data Funding, Inc.; Marketing Image Direct, Inc.; Montgomery Marketing, Inc. LLC; North American Disbursement Agency, Inc.; Pacific Allocation Systems, Inc.; Golden Products Service, Inc.; Edgar Del Rio; NSD Products, Inc. d/b/a NSD Printing; Sean O'Connor; Epifanio Castro; New Generation Graphics, Inc.; Andrea Burrow; Stephen Fennell; and Neptune Data Services, Inc., and their officers, agents, servants, employees, and attorneys are temporarily restrained from:

1. Placing, causing others to place, or conspiring or assisting others to place, materials in the U.S. mail system that: (a) contain false or fraudulent representations or promises including, but not limited to statements to the effect that the recipient has won, will win, or will receive cash, prizes, or awards or that the recipient was specifically

selected or chosen for any reason other than the fact that their name or address appears on a mailing list; or (b) offer for sale information regarding sweepstakes or lotteries;

2. Receiving, handling, opening, or forwarding any mail from U.S. residents that responds to materials that were placed in the U.S mail system and either: (a) contain false or fraudulent representations or promises; or (b) offer for sale information regarding sweepstakes or lotteries;

3. Selling, leasing, or offering to do either for any lists of U.S. residents or mailing lists of any time compiled from U.S. residents who have responded to any materials that were placed in the U.S mail system and either: (a) contain false or fraudulent representations or promises; (b) offer for sale information regarding sweepstakes or lotteries;

4. Entering or inputting data about U.S. residents into a database or forwarding such data received in response to materials that were placed in the U.S. mail system and either: (a) contain false or fraudulent representations or promises; or (b) offer for sale information regarding sweepstakes or lotteries;

5. Depositing, handling, forwarding, or processing any payments received from U.S. residents in response to materials that were placed in the U.S. mail system and either: (a) contain false or fraudulent representations or promises; or (b) offer for sale information regarding sweepstakes or lotteries; and

6. Destroying, deleting, removing, or transferring any and all business, financial, accounting, and other records concerning their operations and the operations of any other entity that is owned or controlled in whole or in part by any defendant.

IT IS FURTHER ORDERED that this temporary restraining order will automatically **EXPIRE on March 6, 2018, at 5:30 p.m.** unless it is extended by the court for cause or converted into a preliminary injunction.

IT IS FURTHER ORDERED that the United States is directed to serve the defendants with summonses, copies of the complaint, and copies of this order as soon as practicably possible.

IT IS FURTHER ORDERED that the United States is **not** required to post a bond for security for the issuance of this temporary restraining order.[51]

IT IS FURTHER ORDERED that the motion to temporarily seal this case **[ECF No. 3] is GRANTED**. This case will remain **SEALED** until February 21, 2018, at 10 a.m., after which time the court will direct the Clerk of Court to unseal this case without further prior notice.

IT IS FURTHER ORDERED that the defendants are ordered to **SHOW CAUSE** in writing by **February 27, 2018**, why this temporary restraining order should not be converted into a preliminary injunction. The United States has until **March 2, 2018**, to file a reply to any response to this show-cause order.

Dated: February 20, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[51] *See* Fed. R. Civ. P. 65(c); *accord* 18 U.S.C. § 1345(a)(3).